### DE SOUCEY v. MANHATTAN RY. CO.

*(Common Pleas of New York City and County, General Term. June 1, 1891.)*

1. CARRIERS — LIABILITY FOR NEGLIGENCE — ELEVATED RAILWAY — STARTING WITH JERK.
   Plaintiff, on entering an elevated railway car, lingered in the selection of a seat until after the train started, which it did with a jerk, throwing her to the floor. There was no evidence to show that the jerk was sufficient to disturb the equipoise of any other passenger, and that some degree of jerk was inevitable in starting the train by means of an engine. *Held*, that the evidence was insufficient to show negligence on the part of the railway company, and that its motion to dismiss the complaint should have been granted.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   A person who enters an elevated railway car at a station, and looks leisurely around without taking a seat, and is thrown down by the inevitable "jerk" of the train in starting, is guilty of contributory negligence, and cannot recover for an injury thereby sustained.

3. SAME—EVIDENCE—DECLARATION OF GUARD—RES GESTÆ.
   In an action to recover damages for an injury sustained by a fall occasioned by the sudden starting of an elevated railway train, the declaration of defendant's servant, one of the guards, "You must be injured," made immediately after the fall, is not admissible in evidence as an admission, being a mere statement of declarant's opinion, and no part of the *res gestæ*.

4. DAMAGES—EVIDENCE—MEDICAL TESTIMONY.
   Where a medical witness testified as to the probable result of an injury, but declined to say that the same would ensue with "reasonable certainty," and, on the contrary, testified that "there was a certain amount of uncertainty about it," his evidence was incompetent, and should have been excluded.

Appeal from trial term.

Action by Mary De Soucey against the Manhattan Railway Company for damages from an injury charged to have been caused by the negligence of the defendant. The alleged negligence consisted in starting the train with a jerk, whereby plaintiff was thrown down and hurt. Plaintiff, when she fell, was in the car, and near the third seat from the entrance.

Argued before ALLEN, P. J., and BISCHOFF and PRYOR, JJ.

*Davies & Rapallo*, (*Joseph H. Adams*, of counsel,) for appellant. *Anson Beebe Stewart*, for respondent.

PRYOR, J. Upon examination of the evidence the conclusion is irresistible that no case was made for the consideration of the jury. That a party alleging negligence must prove it, and prove it, not by a *scintilla* of evidence merely, but by evidence sufficient to authorize a reasonable inference of negligence, is a well-settled principle in the jurisprudence of this state; and that failure to furnish such evidence requires a dismissal of the complaint is an equally incontestable rule of law. *Conlin* v. *Rodgers*, 14 N. Y. Supp. 782, (herewith decided.) Now, what evidence of negligence on defendant's part

does the case exhibit? Not that the train started too soon; for the unchallenged proof is that the plaintiff was safely in the car, some distance from the door, and leisurely looking around for a seat. The only circumstance from which an inference of defendant's negligence may be deduced is that the train started with a jerk sufficiently violent to throw the plaintiff down. But how violent? The plaintiff says, "So violent that I was thrown with full force on my face." Still the degree of violence is in doubt. The statement that the jerk was so violent as to throw the plaintiff down is merely saying that the jerk threw her down; and the intensity of the violence yet remains unascertained. A jerk sufficient to throw down a person in a particular posture, or of feeble and tottering step, might not affect the equilibrium of another in a different condition and attitude. The evidence fails to show that the jerk disturbed the poise of any other passenger. It may be that the plaintiff was of little strength and firmness; or at the moment may have been in an attitude of unstable equilibrium, and so easily toppled over by the slightest shake. Indeed, the uncontradicted evidence is that "she lost her balance by the starting of the car while in the motion of sitting down." Another witness testified that "there was no violent jerk." How, then, upon the evidence, could the jury reasonably find that the jerk was so violent as to authorize an inference of defendant's negligence in starting the train? In *Hayes* v. *Railroad Co.*, 97 N. Y. 259, the car "gave a sudden movement," whereby the plaintiff was thrown down and injured. But the court, reiterating the rule that a plaintiff must prove negligence, and that such proof is not given when it is equally consistent with negligence and non-negligence, reversed a judgment for the plaintiff, saying (page 262:) "It is not shown that the driver started his horses in an unusual or negligent manner. That the car gave a sudden movement—a jerk—is entirely consistent with the supposition that, having been still, the horses were started in a careful and prudent manner; for a car loaded with passengers must necessarily require a strong pull to overcome its resisting *inertia*." So here, in the nature of the thing, a strong traction by the engine, involving necessarily some jerk, was inevitable in starting the train. It cannot be pretended that an elevated railway train, designed especially for rapid transit, must not start from a station until all the passengers are seated. Such a regulation would be incompatible with that celerity without accomplishing which an elevated railroad would have no reason to exist. But here the evidence is that when the train started the plaintiff was lingering in the choice of her seat. Our conclusion is that the proof was altogether inadequate to any reasonable inference of negligence on the defendant's part; and that the court erred in denying the motion to dismiss the complaint.

Assuming, however, that the evidence was enough to warrant the jury in finding the fact of the defendant's negligence, the plaintiff's case was still incomplete for lack of proof of her own care and diligence. That she was bound to negative the fact of contributory negligence on her part, or else be nonsuited, is familiar law. *Conlin* v. *Rodgers, supra*. Her narrative of the occurrence is simply that when she got inside, about opposite the third seat from the door, "the car jerked so violently that she was thrown with full force on her face, and her mouth struck the ground." But a disinterested witness testified that "*this* lady got her fall through her own carelessness. When she came in to take her seat, instead of sitting down, she kept on her feet, and was turning around until the car started, looking around like as she was looking for somebody, and not looking where she seated herself." In rebuttal the plaintiff denied something of this witness' testimony, but the part quoted she did not question or qualify. Upon the uncontradicted evidence, therefore, the reasonable inference is not that the plaintiff was in the exercise of due care, but rather that her own negligence contributed to her injury. *Tolman* v. *Railroad Co.*, 98 N. Y. 198; *Hale* v. *Smith*, 78 N. Y.

480; *Hart* v. *Bridge Co.*, 84 N. Y. 57; *Muhr* v. *Mayor, etc.*, 2 N. Y. Supp. 59; *Cordell* v. *Railroad Co.*, 75 N. Y. 330.     Besides the exceptions to the refusal to dismiss the complaint the appellant urges, for reversal of the judgment, alleged errors in the admission of evidence.     The court allowed proof of the declaration, "You must be injured," made to the plaintiff by one of the defendant's guards, immediately after her fall, and while he was lifting her on her seat.     The competency of such evidence depends not upon the proximity in time between the accident and the statement, but upon whether the statement be of the *res gestæ.*     Such was not the declaration in question.     *Luby* v. *Railroad Co.*, 17 N. Y. 131, 133; *Waldele* v. *Railroad Co.*, 95 N. Y. 274, 278.     But for another reason the evidence was clearly incompetent, namely, it was not the statement of a fact, but of the opinion, or conjecture, of the witness; and surely argument is unnecessary to show that a principal is not to be affected by the speculative opinion of his agent.     Again, a medical witness for the plaintiff was permitted to testify as to the "probable" future "result" of her injury, but the witness declined to say that such result would ensue with "reasonable certainty;" on the contrary, he confessed that "there was a certain amount of uncertainty about it."     The evidence was incompetent.     *Strohm* v. *Railroad Co.*, 96 N. Y. 305; *Tozer* v. *Railroad Co.*, 105 N. Y. 617, 11 N. E. Rep. 369; *Johnson* v. *Railroad Co.*, 4 N. Y. Supp. 848; *Gregory* v. *Railroad Co.*, 8 N. Y. Supp. 525; *Atkins* v. *Railroad Co.*, 10 N. Y. Supp. 432.     That these rulings were prejudicial is sufficiently manifest, since whether the plaintiff was essentially hurt was a closely contested issue, and the incompetent evidence was made the basis of a charge that the jury might award damages for permanent injury.     *Baird* v. *Gillett*, 47 N. Y. 187.     Other errors in the admission of evidence are alleged, but discussion of them is unnecessary, as it is sufficiently apparent already that the judgment must be reversed.     Judgment reversed; and a new trial ordered, costs to abide the event.     All concur.